# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

~~JOHN D. WESTLEY~~

Plaintiff,

vs.

Civil Action Case No.

1-14-CV-109-RS-GRS

JOSE L. ALBERTO, et al
RE/MAX, LLC, et al
VERONA CONDOMINIUM
ASSOCIATION INC. et al
CHARLES PIERCE MATTHEWS, et al
DEUTSCHE BANK SECURITIES
INC, et al
DAVID GUTIERREZ, et al
JACQUELYN PLASER NEEDELMAN,
et al
LOURDES SANCHEZ BARCIA, et al
DMLMR HOLDINGS LLC, et al
PABITREE GOOLCHARRAN, et al
~~MIAMI DADE COUNTY COURTS,~~ et al
GLEN RIVERA, et al
TOM WALSH, et al
CHRIS CONNELLY, et al
MICHAEL GANS, et al
SUZANNE RUIZ, et al
~~PSSLAC(Process Server Service of Los~~
Angeles County), et al
STINSON LEONARD STREET, et al
MORTGAGE IT INC., et al
JP MORGAN CHASE & CO, et al

Defendants.

DEMAND FOR JURY
TRIAL
     YES

## **COMPLAINT**

### PARTIES

1.  Plaintiff: John D. Westley

    3432 Denmark Ave. #188 St. Paul MN 55123

    (305)731-5500

Filed0620'14UsDcFln1PM1247  Y

2. Defendants:

   a. Defendant No. 1: Jose L. Alberto(Prisoner Reg.# 99568-004)

                    FEDERAL DETENTION CENTER

                    110 RABY AVE

                    PENSACOLA, FL 32509

   b. Defendant No. 2: RE/MAX, LLC.

                    1200 SOUTH PINE ISLAND ROAD

                    PLANTATION, FL 33324

   c. Defendant No. 3: VERONA CONDOMINIUM ASSOCIATION INC.

                    815 NE 82ND STREET

                    MIAMI, FL 33138

   d. Defendant No. 4: Charles Pierce Matthews

                    815 NE 82 ST

                    MIAMI FL 33138

   e. Defendant No. 5: Deutsche Bank Securities Inc.

                    d/b/a DEUTSCHE BANK AG(DBAG)

                    1200 SOUTH PINE ISLAND RD.

                    PLANTATION, FL 33324

   f. Defendant No. 6: David Gutierrez

                    701 Pembroke Drive #230

                    Pembroke Pines FL 33026

   g. Defendant No. 7: Lourdes Sanchez Barcia

                    4919 Memorial Hwy # 200

Tampa, Florida 33634

h.   Defendant No. 8:   Jacquelyn Plasner Needelman

444 Brickell Ave. m-100

Miami FL 33131

i.   Defendant No. 9:   DMLMR HOLDINGS LLC

6701 S.W. 48 TERRACE

MIAMI, FL 33155

j.   Defendant No. 10:   PABITREE GOOLCHARRAN

1840 SW 126 AVE

MIRAMAR, FL 33027

k.   Defendant No. 11   Miami Dade County Courts-c/o Wendell M. Graham

73 W. Flagler St.-DCC 717

Miami FL 33130

l.   Defendant No. 12   Glen Rivera

821 SW 2ND STREET # 10

MIAMI, FL 33130

m.   Defendant No. 13   Thomas Walsh

300 South Fourth Street

Minneapolis, MN 55415

o.   Defendant No. 14   Chris Connelly

300 South Fourth Street

Minneapolis, MN 55415

p.   Defendant No. 15   Michael Gans

111 South 10th Street

St. Louis, MO. 63102

q. Defendant No. 16   Suzanne Ruiz

316 N. Robert Street

St. Paul, MN 55101

r. Defendant No. 17   Process Server Service of Los Angeles County

dba-PSSLAC  1605 S Hoover ST STE 103-367

Los Angeles, CA 90006

s. Defendant No. 18   Stinson Leonard Street LLP

150 South Fifth Street, Suite 2300

Minneapolis, MN 55402

t. Defendant No. 19   MortgageIT Inc.

1200 SOUTH PINE ISLAND RD

PLANTATION, FL 33324

u. Defendant No.20   JP MORGAN CHASE

1200 SOUTH PINE ISLAND ROAD

PLANTATION, FL 33324

## JURISDICTION

Federal courts are courts of limited jurisdiction. Generally, two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount of damages is more than $75,000 is a diversity of citizenship case.

3. What is the basis for federal court jurisdiction? *(check all that apply)*

    X-Federal Question        X–Diversity of Citizenship

4. If the basis for jurisdiction is Federal Question, which Federal Constitutional, statutory or treaty right is at issue? List all that apply as subject matter to Federal Court authority.
   Fifth Amendment to United States Constitution-Due Process of Law
   First Amendment to United States Constitution-Freedom of Assembly, Freedom of Speech
   ~~and Freedom of Association~~
   Fourteenth Amendment to United States Constitution-Equal Protection
   Federal Fair Housing Act(FHA)
   Federal Fraud Enforcement & Recovery Act(FERA)
   Fair Credit Reporting Act(FCRA)
   Federal Racketeer Influenced & Corrupt Organizations(RICO)-U.S. Code Title 18
   Federal Uniformed Services Employment and Retaliation Act(USERRA)
   Federal Occupational, Safety & Health Act(OSHA)
   Federal False Claims Act(FCA)
   Americans With Disabilities Act(ADA)
   Identity Theft Deterrence Act
   Federal Mail Fraud Statutes(18 U.S.C.1341)
   Federal Wire Fraud Statutes(18 U.S.C. 1343)
   Freedom Of Information Act(FOIA)
   Espionage and Sedition Acts

5. If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party? Each Plaintiff must be diverse from each Defendant for diversity jurisdiction.

   Plaintiff-United States Citizen-Resident- Minnesota
   Defendants-United States Citizens and Legal Entities- California, Florida, New York,
   ~~Missouri-First Defendant incarcerated in Pensacola FL Federal Detention Center~~

6. What is the basis for venue in the District of Florida? *(check all that apply)*

   x– Plaintiff resides in Minnesota and works in Florida with local business entities
   x-Defendant Alberto is a convicted felon held within the Northern District of Florida
   x–~~Facts alleged below primarily occurred thru communications, dealings, Federal Wire~~
   transfers, interstate commerce, transactions, United States Postal Service Mailings and Money Orders originating in the jurisdiction of the Federal District Court of Minnesota and the Federal District Court of Florida
   x-Other: The local Miami Dade Courts have engaged in public corruption and abdicated ~~their legal responsibilities and mandated duties to allow United States private citizens'~~ constitutionally protected access to petition county courts for Writs of Mandamus and Prohibition to protect tenant, sublets and third party property assigned lease rights governed by Federal laws, codes and statutes.
   x-Defendants and their related agents are attempting to perpetuate a real estate banking property tax evasion fraud upon citizens and business entities located within the jurisdiction of United States District Court of Florida
   x-Defendants have willfully availed themselves of the right to conduct business with United States private citizens and entities located with this Court's jurisdiction.
   x-Impartial, unbiased, timely and just hearings and trial cannot be obtained within any

Florida State or Miami Dade County venue courts due to public corruption, influence peddling, racketeering, corruption, fraud, incompetence, treasonous acts, and domestic terrorism by criminal local interests with direct interests, liabilities and exposures concerning the outcome of disputed material issues and causes of action stated herein.

## STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. The description of facts should include a specific explanation of how, where, and when each of the defendants named in the caption violated the law, and how you were harmed.

7.      Plaintiff was one of several tenants and sublets at the Verona Condominium property

located 821 SW Second St. Unit #2, Miami FL. Prior to leasing the premises from Defendant

Verona Inc., Plaintiff meet with Defendants Matthews and Sanchez-Barcia on numerous

occasions to discuss Verona property issues and Plaintiff's long term ongoing cooperation with

U.S Department of Justice(DOJ) authorities and Federal Bureau of Investigation(FBI) agents

regarding banking real estate condominium fraud, Miami Dade County Courts judicial

racketeering and public corruption extortion matters against Defendant Alberto and his co-

conspirators. On August 20th, 2012, Plaintiff and the sublets renewed a yearly lease rental

agreement directly with property manager/owner Verona Condominium Association Inc. with a

term running from September 1st, 2012 thru August 31st, 2013(Appendix A). Included in the

property located on the leased premises were legal documents and court records being stored for

retired United States military special forces serviceman George M. Tavares, who was Plaintiff's

and sublet businesses' attorney regarding banking real estate condominium fraud, Miami Dade

County Courts' judicial racketeering. influence peddling and public corruption extortion matters

against Alberto, his co-conspirators, Defendants and their representative agents.

8.      Verona was provided all requested and required monthly payments thru December 31st,

2012 along with a $500 damage deposit via interstate money payments, bank wires and United

States Postal Service transactions. The terms of that lease agreement specifically prohibited

assignment or sale of lease and allowed for Plaintiff to sublet the property under clause 15.15.
Verona, as landlord lessor, was noticed and advised of the sublets who subsequently made
whistleblower complaints for OSHA and ADA violations occurring at the property.

9.      Without notice, knowledge, consent or any compensation to the Plaintiff and lessee
sublets, in late October 2012, in a Florida Eleventh Circuit Court foreclosure action(CASE NO.:
2010-019960 CA21) Defendants RE/MAX, Gutierrez, Verona, Matthews, Goolcharran, Rivera,
DMLMR and their representative agents purchased an order through unlawful publically corrupt
acts, bribes and influence peddling allowing for the sale of the property at issue for a half price
discounted rate to Defendant Matthews who was the president of Verona Condo Association Inc.
Defendants RE/MAX, Gutierrez, Verona, Matthews, Goolcharran, Rivera, DMLMR and their
representative agents then illegally assigned the existing lease agreement to Matthews, to
perpetuate a mortgage real estate banking fraud, tax evasions, double rent collections and illegal
foreclosure property taking of Plaintiff's, Tavares and the sublets' lease interests and private
property as retribution for Plaintiff's, Tavares and sublets' ongoing whistleblower cooperation
with Federal authorities into Miami Dade public corruption, banking real estate foreclosure fraud
and racketeering.

10.     In a blatant unlawful attempt at illegal venue and judge shopping, Defendants Matthews
and Verona, then commenced a separate lawsuit in Miami Dade County Court(Case No.: 2012-
23500-CC-05) against the Plaintiff on November 2nd , 2012. Plaintiff immediately noticed
opposing parties and the Miami Dade County Court that he was in Minnesota attending to his
elderly mother and that Tavares was receiving United States Veterans Administration care as a
retired military serviceman at that time. Miami Dade County, State of Florida and Federal
housing laws required that Plaintiff, all tenants, lessees, military servicemen and sublets be first

noticed, served and foreclosed in the higher circuit court mortgage foreclosure action. Matthews, who is not a licensed or practicing attorney, failed to do so and unlawfully signed and executed the Summons and Complaint and repeatedly appeared as a practicing attorney of record representing legal entity Verona Inc. Matthews, Verona and their representative agents then conducted libelous, slanderous and defaming public correspondence with Needelman regarding Plaintiff, Tavares and the sublets. Specific within that correspondence are defaming retributions for Plaintiff whistleblower actions pursued against Alberto, Matthews, Gutierrez, RE/MAX Miami Dade Courts officers and their representative agents who were operating on behalf of the DBAG, Chase, MortgageIT, Needelman, and Miami Mossad traitors conducting illegal banking real estate fraud, obstruction of justice, influence peddling and domestic terrorism against citizens, servicemen and taxpayers of the United States for illicit gain on behalf of foreign countries and entities. With knowledge, forethought and consent, Needelman then illegally conspired with Verona, Matthews, Goolcharran, Rivera, DMLMR and Miami Dade County Courts to cover up the ongoing banking real estate banking fraud and public corruption racketeering operations that was coordinated to steal and destroy Plaintiff's, Tavares' and sublets' evidential records of unlawful Federal criminal and civil acts in further unlawful violations of USERRA, Federal criminal laws and tenant civil protections.

11.    In late November 2012, Defendant Alberto was convicted in U.S. District Court(Southern District of Florida case#12-2494-GARBER)of conspiracy, public corruption and extortion. Through those court files and case records Plaintiff has been informed that the properties at issue in the criminal cases are co-located with the business premises of Defendant Matthews, his employers, real estate associates and representative agents. Plaintiff has now also been informed of the prior personal, social and working relationships of convicted felon Alberto with

8

Matthews' business partners, real estate associates and their representative agents. Matthews and his representative agents had previously attempted to set up a meeting with Plaintiff and Alberto at the property co-located with the Federal criminal cases. Matthews has a long history of property extortion and intimidation assaults including an attempted knifing upon one of Plaintiff's sublet business associates(Miami Beach-case #2009-25806 Aggregated Assault).

12.     Plaintiff, Tavares and the sublets were never served with any copies of Miami Dade County Court filings nor did Verona, Matthews, court officers or their representative agents provide any certificates or affidavits of service for subsequent motions they filed, including the motion for Writ of Possession which was issued on an ex-parte basis without requested constitutionally required due process hearing or trial by jury as unlawful whistleblower retribution for Alberto's conviction.   Plaintiff did not default and paid Miami Dade County Courts to answer by filing motions to Disqualify, Dismiss, Transfer case back to higher district court and to appear telephonically while out of state providing care for his elderly mother. Plaintiff was called in Minnesota by Miami Dade County Court Judge Wendell Graham's law clerks on the morning of the December 5th 2012 scheduled trial date and informed that the Judge would be calling later to Minnesota that day for telephonic due process hearing. Plaintiff was not called by the Judge Graham or Miami Dade County Courts and no rulings were entered on outstanding motions to Disqualify, Dismiss and Transfer and Consolidate cases in higher district court thereby denying constitutionally protected due process access to public courts for fair equitable hearing. While Tavares was receiving United States Veterans Administration care and to further cover up and conceal  unauthorized practice of law on behalf of a Florida corporation and without notice or hearing scheduling, Needelman, Matthews, Verona, Rivera, Goolcharran and DMLMR on December 5th  2012, unlawfully bribed and influenced Miami Dade County

9

Court officers and Judge Graham to fraudulently purchase an Ex-Parte Order Removing Verona Inc. from the case thereby illegally converting the lease ownership rights to Matthews in violation of FERA, FHA, USERRA, and Federal laws named as causes of action.

13.     As further retribution for Alberto's conviction and Plaintiff's continuing cooperation with Federal law enforcement, on December 11th 2012, Judge Graham and Miami Dade County Courts issued another Ex-Parte Order(Appendix B) claiming the Writ of Possession hearing was held April 18th, 2012 **six months prior to the initiation of any underlying eviction action** in an incompetent blatant back dating attempt at a cover up and to obtain possession and destroy evidence of Federal criminal public corruption acts stored on the premises by Plaintiff, Tavares and sublets involving Judge Graham, Miami Dade County Courts, and the co-defendants.  As further whistleblower retribution, Plaintiff was never served with any default orders or notice of hearings for December 11th 2012(or the fabricated April 12th 2012 hearing) and filed for Writs of Mandamus and Prohibition in Miami Dade County Court on December 14th 2012 to protect private property and records of banking real estate public corruption. While Tavares was still receiving United States Veterans Administration care and despite the pending Writ of Mandamus and Prohibitions and outstanding motions to dismiss, transfer and consolidate, Defendants Needelman, Matthews, Verona, Rivera, Goolcharran, DMLMR and their representative agents had the Writ of Possession executed through publically corrupt influence peddling pay offs to Miami Dade County Court officers.  Defendants Needelman, Matthews, Verona, Rivera, Goolcharran, DMLMR and their representative agents then locked Plaintiff and the sublets out of the premises and have destroyed Plaintiff, Tavares and sublets records of illegal civil and criminal acts by the Defendants, Miami Dade County Court officers and their representative agents who are being used as treasonous organized racketeering muscle for

10

fraudulent banking real estate public corruption on behalf of foreign national business associates.

14.     After Miami Dade County Courts accepted requested interstate U.S. postal service money order filing payments and property improvement lien fees, Plaintiff was informed by Miami Dade County Court officers that due to lack of resources Plaintiff,  tenants, United States military veterans, lessees and sublets, cannot file Writs or property lien declarations in local courts to protect their rights to defend themselves civilly against any unlawful eviction acts, banking real estate foreclosure fraud, public corruption and illegal conversion.   Miami Dade County Courts, in violation of constitutional equal protections, incompetently, inequitably and unjustly only allow landlords to file Writs against tenants and sublets thereby requiring this actions due process hearing and jury trial in an unbiased United States District Court.  Despite being noticed to mitigate damages, Defendants and their representative agents have continued to unduly influenced, bribed and illegally buy off Miami Dade County Court officers, including Judge Graham, to prevent Plaintiff's United States Constitutional due process fair hearing and civil rights equal protections against unlawful conversion and illegal property seizures in violation of Federal laws, codes, practices and statutes stated and claimed in this action.

15.     At the time of lease, the foreclosed property was also under the jurisdiction of an ongoing USDOJ banking real estate fraud action against Defendant DBAG(a foreign national company) and their representative agents.   Under terms of a May 2012 nationwide $80,000,000 USDC Southern District of the State of New York banking real estate fraud settlement with the USDOJ(Case No. 11-02976), DBAG, Matthews, Chase, MortgageIT, Goolcharran, Rivera, DMLMR, RE/MAX, Gutierrez, Verona,  Sanchez-Barcia, Needelman, Miami Dade County Courts and their representative agents were required to follow and comply with all FHA and fair housing laws. At issue in this civil action are Plaintiffs' claims that Defendants and their

publically corrupt representatives have continued to conspire, perpetrate and conduct further unlawful banking real estate acts and housing fraud for financial gain thereby damaging Plaintiff and related sublet business interests in violation of Federal laws, codes, practices and statutes.

16.     On July 29th 2013, Plaintiff filed suit against several of the Defendants and their representative agents in Minnesota USDC case #13-cv-2044. Immediately upon retaining and paying PSSLAC to process serve DBAG and their representative agents, Plaintiff began to receive repeated defaming terroristic threats from PSSLAC, DBAG, MortgageIT, Chase, Defendants and their representative agents as organized racketeering muscle for fraudulent banking real estate interests, foreign entities, Miami Mossad agents, publically corrupt public employees and court officers committing treasonous, seditious acts on behalf of foreign national entities(Appendix C).

17.     In September 2014, Plaintiff was contacted by Stinson on behalf of previously unnamed party Chase to seek an extension to file answers the MN USDC case:13-cv2044. Plaintiff, in good faith, consented to an extension unaware of the fact that Alberto, PSSLAC, Stinson, DBAG, Chase, MortgageIT, Sanchez Barcia, Needelman, Miami Dade County Courts, the co-defendants and their representative agencies were further engaging in racketeering, perjury, subornation of perjury, prohibited communications, extortion, slander, fraud, defamation, libel, bribery, illicit quid pro quo dealings and unlawful acts to treasonously deny constitutionally protected private citizen due process civil right access to taxpayer owned and financed Federal Courts, hallways, lobbies, records and clerk offices for required relief and restitution.

18.     In December 2013, DBAG, Ruiz, Chase, MortgageIT, Connolly, Walsh, Gans, Sanchez Barcia, Stinson, Needelman, Miami Dade County court officers, the co-defendants and their representative agents conspired thru prohibited communications and unlawful actions to illegally

12

deny Plaintiff's constitutionally protected due process hearing civil rights for docketed and scheduled hearings against Verona, Matthews and their representative agents(MN USDC case:13-cv2044 Docket#24-December 18, 2014 scheduled hearings on Plaintiff Motions to Strike). On scheduled and docketed hearing dates Walsh and Connelly unlawfully detained Plaintiff and instructed in an intimidating terroristic manner to cease seeking default judgments, due process hearings and access to public courts against publically corrupt court officers, their fellow public union member convicted felon Alberto, PSSLAC, MortgageIT, Chase, DBAG, Matthews, Verona and their co-defendants.    In further treasonous, unconstitutional and publically corrupt acts, Walsh, Connelly and Ruiz physically prevented Plaintiff access to public lobbies, clerk offices and court halls to meet with attorneys, affected parties, United States Military servicemen and media outlets investigating Chase, MortgageIT, Stinson, DBAG, Walsh, Connelly, Ruiz and their co-defendants illicit violations of Federal espionage laws, banking real estate statutes, housing acts, USERRA, FERA, RICO, OSHA and private citizen constitutional civil rights protections. Plaintiff duly advised Walsh, Connelly and Ruiz of their unlawful treasonous actions as public servant employees paid by the Plaintiff, United States citizens, military servicemen and taxpayers.   Plaintiff further noticed court officers Walsh, Connelly and Ruiz on the record of their unlawful racketeering involvement covering up for their fellow publically corrupt employee, Federally incarnated felon Alberto, and MortgageIT, Chase and DBAG, as Federally charged criminal entities illegally influencing Walsh, Connelly, Ruiz, Gans and other court officers personal and family financial interests. These treasonous contemptuous acts have shamefully brought the public's courts and its' public servant employees into further disrepute in violation of Federal laws, codes, practices and statutes stated and claimed in this action.

19.     On November 19, 2013, the USDOJ announced that JPMorgan Chase agreed to pay $13 billion to settle criminal investigations into its business practices pertaining to mortgage-backed securities. On December 20th 2013, in USDC Southern District of the State of New York DBAG, MortgageIT, and their representative agents were ordered to pay $1.63 billion in restitution as civil damages and penalties for conduction massive banking real estate fraud against United States taxpayers. From September 2013 to present to cover up further ongoing acts by illicit quid pro quos arrangements, kickbacks, prohibited communications, banking real estate fraud and unlawful deeds, Ruiz Walsh, Connelly, Stinson,  PSSLAC, DBAG, Gans, Mortgage IT, Chase. Sanchez Barcia, Stinson, Needelman and their representative agents have willfully committed treasonous contemptuous acts upon Plaintiff's public court access and private citizens constitutionally protected due process civil rights.

20.     By illicit quid pro quo dealings as part of those settlements,  MortgageIT, DBAG, Stinson, Chase, their co-defendants and representative agents also unlawfully bought and purchased thru illegal acts, court officer bribes, influence peddling, public prohibited communications and racketeering an order in Plaintiff's original MN USDC case dismissing the entire proceeding for improper venue without any constitutionally protected due process fair hearing against most of the Defendants, including foreign national Goolcharran who had willfully defaulted, in violation of Federal law, statutes and Constitutional protections for private citizen access to public courts for relief and restitution against foreign entities, corrupt governmental officials and their co-conspirators.  Plaintiff now has reported to Federal law enforcement that this dismissal was obtained as whistleblower retribution thru illegal public employee court officer pay-offs, influence peddling, prohibited communications, perjury, subornation of perjury, kick-backs, illicit quid quo pro arrangements and unlawful acts conducted by MortgageIT, Chase, Stinson,

14

DBAG, Connelly, Walsh, Ruiz, Gans, Stinson, Needelman, Miami Dade County Courts, PSSLAC, Sanchez Barcia, their co-defendants and representative agents on behalf of foreign national interests and associates. These include but are not limited to trips to foreign countries, including United States long time enemy countries Cuba and Russia, public union pension fund kick-backs and personal family financial illicit dealings.

21.     From January 2014 to present, Plaintiff and associated media outlets have filed numerous Freedom of Information Act reporter and private citizen requests for court officers public employment records, correspondence and required personal financial disclosures as property of the citizens and taxpayers of the United States of America. Public servants Gans, Ruiz, Walsh and Connelly, the co-defendants and their representative agents have unlawfully acted to the deny release and disclosure of the requested public records as required in violation of FOIA, Federal open government laws and Presidential Executive branch decrees. To date, no FOIA requested records of any kind have been released by Defendants Connelly, Walsh, Ruiz, Gans, and their representative agents  in violation of Federal open government laws and Presidential Executive branch decrees.

22.     For causes of action stated, Plaintiff, sublets and related business interests have $1,700,000 in personal, business and private property that has been illegally seized, held, sold or destroyed thru civil theft and unlawful collusion by Verona, Matthews, Goolcharran, Rivera, DMLMR, Sanchez Barcia, Miami Dade County Courts, Needelman their co-defendants and representative agents thru publically corrupt racketeering, inducement, fraud, whistleblower retributions, negligence, obstruction of justice, libel, defamation, breeches, negligence, malpractice, civil thefts, fraudulent acts, contractual breeches, tort law, misrepresentations, tortuous interferences, perjury and subornation of perjury. Despite repeated requests, Verona, Matthews, Goolcharran,

15

Rivera, DMLMR and their representative agents have to date refused to inventory or return any possession of Plaintiff's, Tavares' and the sublets' property and deposits as retribution for ~~ongoing whistleblowing against their co-defendants and their publically corrupt agents.~~

CAUSES OF ACTION:

<u>Defendants:</u> JOSE L. ALBERTO, et al-RE/MAX, LLC, et al-VERONA CONDOMINIUM ASSOCIATION INC. et al-CHARLES PIERCE MATTHEWS, et al-DEUTSCHE BANK SECURITIES INC, et al-DAVID GUTIERREZ, et al-JACQUELYN PLASER NEEDELMAN, et al-LOURDES SANCHEZ BARCIA, et al-DMLMR HOLDINGS LLC, et al-PABITREE GOOLCHARRAN, et al-MIAMI DADE COUNTY COURTS, et al-GLEN RIVERA, et al TOM WALSH, et al-CHRIS CONNELLY, et al-MICHAEL GANS, et al-SUZANNE RUIZ, et al-PSSLAC(Process Server Service of Los Angeles County), et al-STINSON LEONARD STREET, et al-MORTGAGE IT INC., et al-JP MORGAN CHASE & CO, et al and their representative agents by unlawful deeds, misrepresentations, agreement breaches, tort law violations, extortive acts, negligence, malpractice, civil theft, prohibited communications, perjury, subornation of perjury, illegal transactions, treasonous acts, racketeering, bribery, public corruption, domestic terrorism, banking real estate fraud, illicit agreement, defamation, whistleblower retribution, unjust enrichments, obstruction of justice, contempt of public courts, sedition, conversion and conspiracy violated Fifth Amendment to United States Constitution-Due Process of Law, First Amendment to United States Constitution-Freedom of Assembly, Freedom of Speech and Freedom of Association, Fourteenth Amendment to United States Constitution-Equal Protection, Federal Fair Housing Act(FHA),Federal Fraud Enforcement & Recovery Act(FERA),Fair Credit Reporting Act(FCRA),Federal Racketeer Influenced & Corrupt Organizations(RICO)-U.S. Code Title 18, Federal Uniformed Services Employment and Retaliation Act(USERRA),Federal Occupational, Safety & Health Act(OSHA),Federal False Claims Act(FCA),Americans With Disabilities Act(ADA),Identity Theft Deterrence Act, Federal Mail Fraud Statutes(18 U.S.C.1341),Federal Wire Fraud Statutes(18 U.S.C. 1343),Freedom Of Information Act(FOIA),and the Espionage and Sedition Acts for unjust gain ~~on behalf of foreign entities.~~

## COUNT I-INDUCEMENT

Defendants Verona, Matthews, Goolcharran, Rivera, DMLMR and their agents illicitly ~~induced Plaintiff and related sublets to lease and conduct work improvements on the premises~~ that they knew were involved in an ongoing banking mortgage foreclosure case in violation of stated Federal banking, housing, real estate laws, rights, codes and statutes. This inducement has ~~caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000~~ along with punitive damages to be levied and allocated from each Defendant party as determined

by a United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT II-MISREPRESENTATION

Defendants Verona, Matthews, Goolcharran, Rivera, DMLMR and their representative agents conspired to misrepresent to the Plaintiff and related sublets the ownership and rental status of the premises knowingly involved in an ongoing banking mortgage foreclosure case in violation of several Federal banking, housing, and real estate laws, codes and tort statutes. These misrepresentations have caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT III-FRAUD

Defendants and their agents have committed fraud upon the Plaintiff, related sublets and tax payers of the United States of America for stated reasons, causes and material facts to be ligated before this Court.  These fraudulent acts include but are not limited to, mortgage fraud, banking fraud, real estate fraud, wire fraud, domestic terrorism, mail fraud, contact fraud, tax fraud and condominium homestead exemption fraud in violation of various Federal banking, housing, and real estate laws, tax codes and statutes. These frauds have caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT IV-TORTUOUS INTERFERENCE

Defendants and their agents have tortuously interfered with the Plaintiff, Tavares, sublets and their civil rights associations for stated treasonous reasons, civil right

17

causes(including ADA non-compliances & USERRA violations)   and material facts to be litigated before this Court. These tortuous interferences have caused Plaintiff, sublets and related ~~business interests damages, costs and expenses in excess of $75,000 along with punitive~~ damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT V-DEFAMATION

Defendants and their agents have, for stated reasons, causes and material facts to be ligated before this Court conducted an ongoing slander and libel campaign to defame Plaintiff ~~for cooperating with DOJ and FBI law enforcement investigations and Federal cases regarding~~ banking real estate foreclosure fraud, extortions, tax evasion and public corruption. This defamation includes false and unlawful FCA reporting and has caused Plaintiff and related ~~business interests damages, costs and expenses in excess of $75,000 along with punitive~~ damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT VI-CONVERSION/CIVIL THEFT

Defendants and their agents engaged in conversion and civil theft of Plaintiffs, Tavares, sublets' and related business associates property, improvements to the premises, ~~records and possessions for reasons, causes and material facts to be ligated before this Court.~~ This conversion and identity civil theft, entails the stealing and disposing of criminal evidence including United States Postal Service Mailings that have caused Plaintiff and related sublet ~~interests damages, costs and expenses in excess of $75,000 along with punitive damages to be~~ levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT VII-UNJUST ENRICHMENT

Defendants and their agents have been unjustly enriched due to stated reasons, causes and material facts to be ligated before this Court. This enrichment includes payments, graft, bribes, influence peddling and illicit quid pro quo arrangements with public employees and public courts and it's officers. This unjust enrichment has caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT VIII-RACKETEERING

Defendants and their agents have engaged in public corruption and criminal RICO act violations including organized graft, perjury, subornation of perjury, domestic terrorism, extortion, brides, pay offs, tax evasion, illicit quid pro quo agreements, obstruction of justice, homestead mortgage banking real estate fraud, destruction of evidence, contractual breeches and kick-backs for stated reasons, causes and material facts to be ligated before this Court. This public and private racketeering and public corruption has caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive treble damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT IX-WHISTLEBLOWER RETRIBUTION

Defendants and their agents have, for stated reasons, causes and material facts to be ligated before this Court, engaged in whistleblower retribution against Plaintiff for cooperating with DOJ/FBI investigations and Federal cases regarding banking real estate foreclosure fraud, tax evasion and public corruption. This retribution, using the Defendants and their representative

agents as organized muscle for banking real estate fraud racketeering, was also conducted due to ADA, USERRA and OSHA violation complaints and have caused Plaintiff and related business interests damages, costs and expenses in excess of $75,000 along with punitive damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT X-BREACH

Defendants Verona Inc., Matthews, DMLMR Holdings LLC, Goolcharran, Sanchez-Baria, Gutierrez, RE/MAX, and Miami Dade County Courts breached agreements, leases, contacts and commerce arrangements for stated reasons, causes and material facts to be ligated before this Court. These breeches have caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive treble damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

## COUNT XI-NEGLIGENCE/MALPRACTICE

Defendants Matthews, RE/MAX, Gutierrez, Sanchez-Barcia, and Needelman are publically licensed realtors or attorneys who have negligently conducted malpractice for personal profit and gain. Ruiz, Walsh, Gans, Connelly, Needelman, Judge Graham and Miami Dade County Courts in blatant contempt of the public courts have been negligent in enforcing the codes of professional and judicial conduct and unauthorized practice of law to benefit their publically corrupt fellow employees and bar member associates for stated reasons, causes and material facts to be ligated before this Court. This negligence and malpractice has caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive treble damages to be levied and allocated from each Defendant party as determined

by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

### COUNT XII-FOIA VIOLATIONS

Defendants Gans, Walsh, Connelly, and Ruiz are public servants working for, and paid by, the citizens and taxpayers of the United States. Their non-exempt employment records, union agreements and correspondence are public property. Defendants Chase, MortgageIT, DBAG, Gans, Walsh, Connelly, Ruiz, Stinson, co-defendants and their representative agents have conspired to illegally deny media and Plaintiff repeated Freedom of Information requests for public records to cover up past and ongoing unlawful acts. These racketeering cover ups entail thousands of non-exempt public documents which carry financial penalties and treble damages in excess of $75,000 to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

### COUNT XIII-CIVIL RIGHTS VIOLATIONS

Defendants and their agents have, for stated various reasons, causes and material facts to be ligated before this Court violated the United States Constitution Civil Rights of Plaintiff, United States military servicemen associates, and media interests. These include civil rights violations of Freedom of Speech, Freedom of Assembly, Freedom of Association and the denial of equal protections for public court due process access for relief and restitution. These United States Constitution Civil Rights violations have caused Plaintiff and related sublet interests damages, costs and expenses in excess of $75,000 along with punitive treble damages to be levied and allocated from each Defendant party as determined by an impartial United States citizen and taxpayer jury demanded as a matter of right in this action.

--------------------

Plaintiff reserves all rights to amend this complaint and/or file separate actions for False Claims, tax evasion whistleblower claims and domestic extortion terrorism on behalf of foreign national governments against the Defendants pending required discovery and ongoing Federal criminal investigations into dysfunctional publically corrupt Miami Dade County Courts and Florida banking real estate interests which may be litigated under the discretion and oversight of the USDOJ. These illegal unpatriotic acts are part of international racketeering operations between banks, homeowner associations, management companies, bar associations, realtors, public employees, public unions, local governments, bar associations and their representative agents to falsify homestead bank mortgaged foreclosures and leased housing property records thereby fraudulently obtaining U.S. taxpayer backed stimulus funding, public employee payments and Federal grants in violation of the False Claims Act, Fraud Enforcement Recovery Act, Fair Housing Act and Fair Credit Reporting Act. Any judicial immunity, public employee exclusions or attorney privilege defenses are invalid due to the illegality of the racketeering, organized public corruption, domestic terrorism, treason, sedition and unlawful extortion acts involved and claimed against Defendants in this action.

Plaintiff further reserves all rights to amend this complaint and/or file separate actions, writs and injunctions under the FOIA for non-exempt public servant records and correspondence.

DEMAND FOR RELIEF & RESTITUTION

Plaintiff seeks and demands the following restitution and compensation from each Defendant party along with whatever other relief the Court and jury of United States citizens and taxpayers deem appropriate:

RE/MAX, LLC, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and court ordered organizational housing civil rights due process remedial education VERONA CONDOMINIUM ASSOCIATION INC., et al--Return of all converted Plaintiff and Sublet property, records and deposits along with monetary compensations in excess of $75,000 along with treble punitive penalties for damages affixed

CHARLES PIERCE MATTHEWS, et al-- Return of all converted Plaintiff, Tavares and Sublet property, records and deposits along with monetary compensations in excess of $75,000 along with treble punitive penalties for damages affixed and forfeiture of all real estate licenses

DEUTSCHE BANK SECURITIES INC., et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed for violations of Federal laws, statutes and acts

DAVID GUTIERREZ, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and forfeiture of all real estate licenses

LOURDES SANCHEZ BARCIA, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and disbarment

JACQUELYN PLASER NEEDELMAN, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed, disbarment, and a constitutional equal protection clause court order allowing Plaintiff to legally represent affiliated business entities in all Florida Courts

DMLMR HOLDINGS LLC, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

PABITREE GOOLCHARRAN, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

JOSE L. ALBERTO, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

MIAMI DADE COUNTY COURTS, et al--Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed along with Court ordered remedial U.S. Constitutional and Federal statutory tenant's civil rights due process education for all officers of the court including but not limited to clerks and Sheriff deputies

GLEN RIVERA, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

TOM WALSH, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and termination for cause

CHRIS CONNELLY, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and termination for cause

MICHAEL GANS, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and termination for cause

SUZANNE RUIZ, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed and termination for cause

PSSLAC(Process Server Service of Los Angeles County), et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

STINSON LEONARD STREET, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

MORTGAGE IT INC., et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

JP MORGAN CHASE & CO, et al- Monetary compensation in excess of $75,000 along with treble punitive penalties for damages affixed

Date: June 19th 2014

Signature of Plaintiff _____
                        John D. Westley

Mailing Address     3432 Denmark Ave. #188 St. Paul MN 55123

Telephone Number    305-731-5500

# **APPENDIX A**

# APARTMENT LEASE AGREEMENT

This Lease Agreement ("LEASE") is entered by and between <u>Verona Condo Association</u> ("Landlord") and <u>John Westley</u> ("Tenant") on <u>9/1/2011</u>. Landlord and Tenant may collectively be referred to as the "Parties." This Lease creates joint and several liability in case of multiple Tenants.

# WITNESSETH:

That in consideration of the mutual agreements herein contained, Landlord and Tenant hereby agree and covenant to and with each other as follows:

1.  **Leases Premises; Term of Lease; etc.**
    1.1  **Leased Premises.** Landlord leases to Tenant, and Tenant rents from Landlord, the premises located at: <u>821 SW 2nd ST, UNIT 2, MIAMI, FL 33130</u> (the "Premises") to Tenant.
    1.2  **Original Term.** This Lease shall commence on <u>9/1/2011</u> and, unless sooner terminated pursuant to law or pursuant to any of the terms hereof, shall expire on <u>8/31/2012</u> (the "Lease Term").
    1.3  **Use of Premises.** Tenant shall use the Premises as a residence only, and for no other purpose. The premises shall not be used to carry on any type of business or trade, unless Tenant has received the prior written consent of the Landlord. Tenant will comply with all laws, rules, ordinances, statutes and orders regarding the use of the Premises.
    1.4  **Inspection of Premises.** Tenant or Tenant's agent has inspected the Premises, the fixtures, the grounds, building and improvements and acknowledges that the premises are in good and acceptable condition and are habitable. If, in Tenant' opinion, the condition of the Premises has changed at any time during the Lease Term, Tenant shall promptly provided reasonable notice to Landlord.
    1.5  **Occupants of Premises.** Tenant agrees that no more than 2 persons may reside on the Premises, unless Tenant has received the prior written consent of the Landlord.
2.  **Rent Payments; Late Fees.**
    2.1  **Rent.** Tenant shall pay the Landlord during the Lease Term as rent for the Premises the amount of <u>$500.00</u> ("Rent") [prorated rent for five days] each month in advance on the first day of each month. If the Lease Term does not start on the first day of the month or end on the last day of a month, the Rent for the relevant month will be prorated accordingly.
    2.2  **Manner of Payment.** The Rent, and all other sums payable by Tenant to Landlord under this Lease, shall be payable in by check, cashier's check or money order of the United States of America and shall be paid to Landlord and Landlord's address, <u>at VERONA CONDO ASSOCIATION, INC. BOX 530382, MIAMI, FL 33138.</u>
    2.3  **Late Fees.** If any amounts due under the Lease are more than 5 days late, Tenant agrees to pay a late fee of $100.00.

Initials
Landlord _CW_
Tenant(s)

2.4 **Insufficient Funds.** Tenant agrees to pay the charge of $50.00 for each check provided by the Tenant to Landlord that is returned to Landlord for lack of sufficient funds, plus a $100.00 late fee.

## 3. Security Deposit.

3.1 **Security Deposit.** On execution of this Lease, Tenant shall deposit with Landlord, in trust, a security deposit of $500 (the "Deposit"), as a security for the performance of Tenant's obligations under this Lease. Landlord may (but shall have no obligation to) use the Deposit or any part thereof to cure any breach or default of Tenant under this Lease, or to compensate Landlord for any damage as it incurs as a result of Tenant's failure to perform any of Tenant's obligations hereunder. Landlord is not limited to the Deposit to recoup damage costs, and Tenant remains liable for any balance. Tenant shall not apply or deduct any portion of the Deposit from any month's rent, including the last month of the rental term. Tenant shall not use or apply the Deposit in lieu of payment of Rent. If Tenant breaches any terms or conditions of this Lease, Tenant shall forfeit the Deposit, as permitted by law.

3.2 **Return of Deposit.** In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, covenants and conditions of this Lease, the Deposit shall be returned to Tenant 15 days after the date fixed as the end of the Lease and after delivery of entire possession of the Premises to Landlord in the same condition the unit was leased.

## 4. Default.

4.1 **Event of Default.** If Tenant defaults in fulfilling any of the covenants of this Lease, Tenant shall be in default of this Lease. Then, in any one or more of such events, subject to any statute, ordinance or law to the contrary, and upon Landlord serving a written three (3) days notice upon Tenant specifying the nature of said default and upon the expiration of said three (3) days, if Tenant does not cure a default of which he has been notified, or if the default cannot be completely cured or remedied in seven days, Landlord may at Landlord's option: (i) cure such default ad add the cost of such cure to Tenant's financial obligations under the Lease; or (ii) declare Tenant in default and terminate the Lease.

4.2 **Physical Remedies.** If the notice provided for in Section 4.1 has been given, and the term shall expire as noted, or if Tenant shall make default in the payment of Rent, then Landlord may without notice, as permitted by law, re-enter the Premises either by force of otherwise, dispossess Tenant by summary proceedings or otherwise, and retake possession of the Premises. Tenant hereby waives the service of notice of intention to re-enter or institute legal proceedings to that end.

4.3 **Financial Remedies.** In the event of any default, re-entry, expiration and/or dispossession by summary proceedings or otherwise, (i) the Rent shall become due thereupon and be paid up to the time of such re-entry, dispossession or expiration, together with such expenses Landlord

Initials
Landlord $CM$
Tenant(s)

Case 1:14-cv-22939-CMA  Document 1  Entered on FLSD Docket 06/24/2014  Page 27 of 37

Apartment Lease                                                                                      3

may incur for legal expenses, attorneys' fees, brokerage, and/or putting the Premises in good order; (ii) Landlord may re-let the Premises or any part or parts thereof; and/or (iii) Tenant shall also pay Landlord liquidated damages for his failure to observe and perform the covenants in this Lease. Landlord may, at his sole option, hold Tenant liable for any difference between the Rent payable under this Lease during the balance of the Lease Term, and any rent paid by successive Tenant if the Premises are re-let. In the event that after default by Tenant Landlord is unable to re-let the Premises during any remaining term of this Lease, Landlord may at his option hold Tenant liable for the balance of the unpaid Rent under the Lease for the remainder of the Lease Term.

## 5. Quiet Enjoyment.

5.1 **Quiet Enjoyment**. Landlord covenants and agrees with Tenant that upon Tenant paying Rent, and observing and performing all of the terms, covenants and conditions on Tenant's part to be observed and performed under the Lease, Tenant may peaceably and quietly enjoy the Premises, subject nonetheless to the terms and conditions of this Lease.

## 6. Assignment and Subletting.

6.1 **Assignment**. Tenant expressly covenants that is shall not assign or sublease any interest in the Lease without prior written consent of the Landlord, which consent shall not be unreasonable withheld. Any assignment or sublease without Landlord's written consent shall not be unreasonably withheld. Any assignment or sublease without Landlord's written prior consent shall, at Landlord's option, terminate this Lease. No assignment, underletting, occupancy or collection shall be deemed a waiver of the provisions of this lease of this Lease, the acceptance of the assignee, undertenant or occupant as tenant, or a release of Tenant from the further performance by Tenant of covenants on the part of Tenant in this lease.

## 7. The Premises: Possession; Treatment; etc.

7.1 **Possession and Surrender**. Tenant shall be entitled to possession of the Premises on the first day of the Lease Term, and Tenant shall not be obligated to accept possession of the Premises prior to the first day of the Lease Term. At the expiration of the Lease Term, Tenant shall peaceable surrender the Premises to Landlord's agent in good condition, as it was at the commencement of the Lease, subject to ordinary wear and tear.

7.2 **Utilities and Services**. Tenant will be responsible for all utilities and services required on the Premises.

7.3 **Pets**. Tenant is not permitted to keep any Pets on the Premises without the prior written consent of Landlord.

7.4 **Dangerous Materials**. Tenant shall not keep or have on or around the Premises any item of a dangerous, flammable or explosive nature that might unreasonable increase the risk of fire or

Initials
Landlord
Tenant(s)

explosion on or around the Premises or that might be considered hazardous by any responsible insurance company.

**7.5 Alterations and Improvements.** Tenant agrees not to make any improvements or alterations to the Premises without the prior written consent of Landlord. If any alterations, improvements or changes are made to or built on or around the Premises, they shall become the property of Landlord and shall remain at the expiration of the Lease, unless otherwise agree in writing.

**7.6 Maintenance and Repair.** Tenant will, at Tenant's sole expense, keep and maintain the Premises in good, clean and sanitary condition and repair during the term of this Lease and any renewal thereof. Tenant shall be responsible to make all repairs to the Premises and fixtures that may have been damaged by Tenant's misuse, waste or neglect, or that of the Tenant's family, agent or visitor. Tenant agrees that no painting will be done on or about the Premises without the prior written consent of the Landlord. Tenant shall promptly notify Landlord of any damage, defect or destruction of the Premises, or in the event of the failure of any of the appliances or equipment. Landlord will use his best efforts to repair or replace any such damaged or defective area, appliance or equipment.

**7.7 Damage to Premises.** In the event that Premises are destroyed or rendered wholly uninhabitable by fire, storm, earthquake or other casualty not caused by the negligence of Tenant, this Lease shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The Rent provided for herein shall then be accounted for by and between Landlord and Tenant up to the time of such injury or destruction of the Premises, Tenant paying Rent up to such date and Landlord refunding Rent collected beyond such date. Should a portion of the Premises thereby be rendered uninhabitable, the Landlord shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Landlord exercises its right to repair such uninhabitable portion, the Rent shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Landlord as speedily as practicable, after which the full Rent shall recommence and the Lease continue according to its terms.

## 8. Inspection.

**8.1 Inspection of Premises.** Landlords and Landlord's agents shall have the right at all reasonable times during the term of this Lease and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon, and for the purpose of making any repairs, additions or alterations as may be deemed appropriate by Landlord for the preservation of the Premises or the building. Tenant agrees to make the Premises available to Landlord or Landlord's agents to inspect, to make repairs or improvements, to supply agreed services to show the Premises to prospective buyers or tenants, or to address an emergency. Except in an emergency situation, Landlord shall give Tenant reasonable notice of intent to enter. For these purposes, twenty-four (24) hour notice

Initials
Landlord
Tenant(s)

shall be deemed reasonable. Tenant shall not, without Landlord's prior written consent, add, alter or re-key any locks to the Premises. At all times Landlord shall be provided with a key or keys capable of unlocking all such locks and permitting entry. Tenant further agrees to notify Landlord in writing if Tenant installs any burglar alarm system, including instructions on how to disarm such alarm in case of emergency entry.

## 9. **Abandonment.**

9.1 **Abandonment.** If at any time during the term this Lease Tenant abandons the Premises or any part thereof, Landlord may at his option possession of the Premises by any legal means without liability to Tenant and may, at Landlord's option, terminate the Lease. Abandonment is defined as absence of the Tenant from the Premises for at least 30 consecutive days without notice to Landlord. If Tenant abandons the Premises while the Rent is outstanding for more than 15 days and there is no reasonable evidence, other than the presence of Tenant's personal property, that Tenant is occupying the unit, Landlord may at Landlord's option terminate this Lease and regain possession of the Premises by Tenant, then Landlord shall consider any personal property belonging to Tenant and left on the Premises to also have been abandoned, in which case Landlord may dispose of all such personal property in any manner Landlord shall deem proper and Landlord is hereby relieved of all liability for doing so.

## 10. **Extended Absences**.

10.1 **Extended Absences**. In the event Tenant will be away from the Premises for more that 30 consecutive days, Tenant agrees to notify Landlord in writing of such absence. During such absence, Landlord may enter the Premises at times reasonably necessary to maintain the property and inspect for damages and needed repairs.

## 11. **Security System**.

11.1 **Security System.** Tenant understands that Landlord does not provide any security alarm system or other security for Tenant or the Premises. In the event any alarm system is provided, Tenant understands that such alarm system is not warranted to be complete in all respects or to be sufficient to protect Tenant or the Premises. Tenant releases Landlord from any loss, damage, claim or injury resulting from the failure of any alarm system, security or from the lack of any alarm system or security.

## 12. **Insurance.**

12.1 **Insurance.** Landlord and Tenant shall each be responsible for maintaining appropriate insurance for their respective interests in the Premises and property located on the Premises. Tenant understands that Landlord will not be responsible for any loss of Tenant's property, whether by theft, fire, riots, strikes, acts of God or otherwise. Landlord encourages Tenant to obtain renter's insurance or other similar coverage to protect against risk of loss.

Initials
Landlord _____
Tenant(s) _____

### 13. No Other Representations, Construction; Governing Law; Consents.

13.1 **No Other Representations**. Tenant expressly acknowledges and agrees that Landlord has not made and is not making, and Tenant, in executing and delivering this Lease, is not relying upon, any warranties, representations, promises or statements, except to the extent that they are expressly set forth in this Lease. It is understood and agreed that all understandings and agreements heretofore had between the parties are merged into this Lease, which alone fully and completely expresses their agreements.

13.2 **Construction and Severability**. If any of the provisions of this Lease, or the application thereof to any person or circumstances, shall, to any extent, be held invalid or unenforceable for any reason, the remainder of this Lease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable shall not be affected thereby, and every provision of this lease shall be valid and enforceable to the fullest extent permitted by law. If any provision of this Lease is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

13.3 **Governing Law**. This Lease shall be governed in all respects by, and construed in accordance, with the laws of the State of Florida.

### 14. Parties Bound.

14.1 **Binding Effect**. The covenants and conditions contained in the Lease shall apply to and bind the Parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

14.2 **Exception**. The obligations of Landlord under this Lease shall not be binding upon Landlord herein with respect to any period subsequent to the transfer of his interest in the Premises as owner or lessee thereof, and in event of such transfer said obligations shall thereafter be binding upon each transferee of the interest of Landlord.

### 15. Miscellaneous.

15.1 **Entire Agreement**. This Lease contains all the understandings relating to the leasing of the Premises and the Landlord's obligations in connection therewith and neither the Landlord nor any agent or representative of the Landlord has made or is making, and the Tenant is executing and delivering this Lease is not relying upon, any warranties, representations, promises or statements whatsoever, except to the extent expressly set forth in this Lease. All understandings and agreements, if any, heretofore had between the parties are merged in this Lease, which alone fully completely expresses the agreement of the parties. This Lease may be modified in writing and must be signed by both Landlord and Tenant.

Initials
Landlord
Tenant(s)

**15.2 No Waiver.** The failure of either party to insist in any instance upon the strict keeping, observance or performance of any provision of this Lease or to exercise any election in this Lease shall not be construed as a waiver or relinquishment for the future of such provision, but the same shall continue and remain in full force and effect. No waiver or modification by either party of any provision of this Lease deemed to have been made unless expressed in writing and signed by the party to be charged. The receipt and retention by the Landlord of Rent with knowledge of breach of any provision of this Lease shall not be deemed a waiver of such breach.

**15.3 Cumulative Rights.** Landlord's and Tenant's rights under this Lease are cumulative, and shall not be construed as exclusive of each other unless otherwise required by law.

**15.4 Notice.** Any notice required or otherwise given pursuant to this Lease shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service, if to Tenant, at the Premises and if to Landlord, at the address for payment of Rent. Either party may change such addresses from time to time by providing notice as set forth above.

**15.5 Headings.** The headings of the sections of this Lease are for convenience only and are not to be considered in construing said sections.

**15.6 Indemnification.** To the extent permitted by law, Tenant will indemnify and hold Landlord and Landlord's property, including the Premises, free and harmless from any and all liability for loss, claims, injury to or death of any person, including Tenant, or for damage to property arising from Tenant's use and occupation of the Premises, or from the acts or omissions of any person or persons, including Tenant, in or about the Premises with Tenant's express or implied consent, except Landlord's act or negligence.

**15.7 Legal Fee.** In the event of any legal action by the parties arising out of this Lease, the losing party shall pay the prevailing party's reasonable attorneys fees and cost in addition, to all other awarded relief.

**15.8 Keys.** Tenant will be given 2 key(s) to the Premises, entrance doors, gate(s) and N/A mailbox key(s). Tenant shall be charged $100.00 if all keys are not returned to Landlord following termination of the Lease.

**15.9 Display of Signs.** Landlord or Landlord's agent may display "For Sale," or "For Rent," "Vacancy" or similar signs on or about the Premises and enter to show the Premises to prospective tenants. Tenant agrees that no signs shall be placed on the Premises without the prior written consent of Landlord.

**15.10 Noise.** Tenant shall not cause or allow any unreasonably loud noise or activity in the Premises that might disturb the rights, comforts and conveniences of other persons. Furniture delivery and removal will take place at such times as designated by the Landlord.

Initials
Landlord _____



Apartment Lease                                                                                                8

15.11 **Bicycles**. All bicycles owned by Tenant are not permitted to be stored in the hallways, entrances and lobbies.

15.12 **Holdover**. Tenant failing to sign a new lease upon expiration of the Lease shall pay a rent amount that is double the monthly rent amount herein.

15.15 **Subletting**. Tenant may sublet apartment at his choice with notice given to Landlord. Tenant must remain liable for all covenants and responsibilities of the lease.

IN WITNESS WHEREOF, the parties have caused this Lease to be executed the day and year first above written.

LANDLORD:

Charles Matthews, Verona Condo Association, INC.

TENANT:

John Westley

Initials
Landlord
Tenant(s)

**Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards**

**Lead Warning Statement**
*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

**Lessor's Disclosure**

(a)  Presence of lead-based paint and/or lead-based paint hazards (check (i) or (ii) below):

    (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

    _____

    (ii) __✓__ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b)  Records and reports available to the lessor  (check (i) or (ii) below):

    (i) _____ Lessor has provided the lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).

    _____

    (ii) __✓__ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment** (initial)

(c)  _____ Lessee has received copies of all information listed above.

(d)  _____ Lessee has received the pamphlet *Protect Your Family from Lead in Your Home.*

**Agent's Acknowledgment** (initial)

(e)  _____ Agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| Lessor | Date | Lessor | Date |
|---|---|---|---|
| Lessee | Date | Lessee | Date |
| Agent | Date | Agent | Date |

# APPENDIX B

IN THE COUNTY COURT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION

Case No.12-23500-CC- 05(08)
Judge Wendell M. Graham

CHARLES MATTHEWS

      Plaintiff,

v.

JOHN WESTLEY

      Defendant.
_____/

**ORDER AUTHORIZING EXECUTION
ON WRIT OF POSSESSION**

      This cause came on to be heard on April 18, 2012 to address all pending matters

in the action.  After hearing from the parties and considering all testimony, argument

and relevant authority available to the court, it is

      ORDERED AND ADJUDGED that all pending motions are denied and that the

Sheriff of Miami-Dade County is hereby authorized to execute the previously issued writ

of possession, forthwith.

      DONE AND ORDERED and Miami, Miami-Dade County, Florida on this 11th day

of December, 2012.

                        WENDELL M. GRAHAM
                        COUNTY COURT JUDGE

Sheriff of Miami-Dade County, Fax no. (786) 469-3660

Charles Matthews
P.O. Box 53082
Miami, FL 33150

John Westley
3432 Denmark Avenue, # 188
St. Paul, MN 55123

John Westley
821 SW 2nd Street, Unit 2
Miami, FL 33130

# APPENDIX C

**From:** Tabitha Hicks <3499dm@gmail.com>

**To:** Westley <westley@thewomb.com>
**Cc:**

**Date:** Thursday, August 29, 2013 05:59 pm
**Subject:** Re: LA process service
**Attachments:**

you are the biggest asshole i ever seen

On Thu, Aug 29, 2013 at 2:59 PM, Tabitha Hicks <3499dm@gmail.com> wrote:
> your a loser and i hate you i am so happy you aint out here in los angeles if you ever do come watch what
> happens to you

> On Thu, Aug 29, 2013 at 2:56 PM, Tabitha Hicks <3499dm@gmail.com> wrote:
>> john why wont you respond? its cool. we got you. You are one lousy person and i hate your guts!!!!!!!!!!!!! we
>> fuckin did you a favor by serving you papers you asshole. they aint even at that place of business you fucking
>> jerk. im about to write a bad review about your company and specifically name you you asshole unless you
>> take it down you are a lier

>> On Thu, Aug 29, 2013 at 2:53 PM, Tabitha Hicks <3499dm@gmail.com> wrote:
>>> did you write a bad review about us? Why did you do that? We tried to serve your papers with no success.

>>> On Mon, Aug 26, 2013 at 2:37 PM, Tabitha Hicks <3499dm@gmail.com> wrote:
>>>> **Please call us at 562-794-8637**

>>>> On Sat, Aug 24, 2013 at 8:10 PM, Tabitha Hicks <3499dm@gmail.com> wrote:
>>>>> **THEY ARE NOT AT THAT ADDRESS ANYMORE. WE SERVED IT ANYWAY AS TO LAST KNOWN MAILING
>>>>> ADDRESS FOR THIS DEFENDANT. PLEASE MAIL A CHECK IN THE AMOUNT OF 50 DOLLARS FOR THE
>>>>> PROOF OF SERVICE.**

>>>>> **WE HAVE TO REMAIL DOCUMENTS TO THE ADDRESS FOR LAW PURPOSES.**

>>>>> On Thu, Aug 15, 2013 at 10:39 AM, Westley <westley@thewomb.com> wrote:
>>>>>> The **address** for the **Deutsche Bank National Trust** Co. as listed with the Securities and Exchange
>>>>>> Commission is 300 South Grand Avenue, Los Angeles CA 90071

>>>>>> --
>>>>>> Please mail your payment to:

>>>>>> Process Server Service of Los Angeles County
>>>>>> 1605 S Hoover ST STE 103-367
>>>>>> Los Angeles, CA 90006

>>>>>> If you have just now requested a quote for process server services, Check and money order are the methods for
>>>>>> payment. You may also opt to mail your documents to the same address. Multiple order are best received this
>>>>>> way to avoid printing fees.

>>>>>> www.psslac.com

>>>>>> Thank you for using,

https://www.networksolutionsemail.com/edgedesk/cgi-bin/viewmail.exe?id=01c70525...